IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-03108-WJM-MEH

JOHN HUTCHINSON,

      Plaintiff,

v.

SGT. HOULE, at Buena Vista Minimum Center,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [filed June 29, 2012; docket #34].  In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #35].  The Court finds oral argument would not materially assist the Court in its adjudication of the motion.  Based on the record contained herein, the Court RECOMMENDS that the District Court **grant in part and deny in part** the Defendant's motion to dismiss.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United*

**BACKGROUND**

I.    **Procedural History**

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, initiated this action on

November 29, 2011. (Docket #1.)  On January 18, 2012, Magistrate Judge Shaffer directed Plaintiff

to file an amended complaint to correct certain deficiencies.  (Docket #7.)  Plaintiff did not respond;

therefore, Judge Babcock issued an order on the original Complaint dismissing all claims except

Plaintiff's claim for "deliberate indifference" against Defendant Sgt. Houle.  (Docket #8.)

On April 17, 2012, Defendant filed a motion to dismiss the Complaint asserting he is

absolutely immune from liability for claims against him in his official capacity and qualifiedly

immune from liability for Plaintiff's failure to state an Eighth Amendment claim.  (Docket #19.)

Plaintiff failed to file a response to the motion in contravention of this Court's order (docket #21);

thus, this Court issued an order for Plaintiff to show cause why the motion to dismiss should not be

granted.  (Docket #24.)  Plaintiff responded by seeking an extension of time within which to file a

response (docket #26); this Court granted the motion setting June 15, 2012 as the deadline.  (Docket

#28.)

On June 13, 2012, Plaintiff filed a response to the motion together with an Amended

Complaint.  (Dockets ##31, 32.)  Accordingly, this Court denied Defendant's first motion to dismiss

as moot and instructed Defendant to file an answer or other response to the Amended Complaint.

(Docket 33.)  Defendant filed the present motion to dismiss on June 29, 2012, asserting essentially

the same arguments as those in the first motion.  This Court ordered the Plaintiff to file a response

to the motion on or before July 23, 2012 (docket #36); however, the Plaintiff has filed no response.

*States*, 950 F.2d 656, 659 (10th Cir. 1991).

## II.     Facts of the Case

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in the Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001), and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must limit its review to the four corners of the Amended Complaint, but may also consider documents attached to the pleading as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as any unattached documents which are referred to in the Amended Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The Plaintiff alleges he suffered a broken right hand on February 25, 2011.  He was released to return to work on March 23, 2011 with written restrictions by Dr. Fisher not to use his right hand. However, due to a disciplinary write-up, Plaintiff could not return to work right away; rather, he returned to work on April 1, 2011 after he was cleared of the disciplinary charge.  Despite the written restrictions and an email from medical, Plaintiff's supervisor, Defendant Sgt. Houle, forced the Plaintiff to work using his right hand with threats of a disciplinary write-up, which would result in loss of good time and privileges, and may result in the transfer to a higher security prison.

Within a couple of days, Plaintiff's hand was re-casted due to the damage to his right hand. The case was removed on April 13, 2011 and he was placed in a soft splint with continued work restrictions.  A third x-ray was scheduled for May 18, 2011; however, on May 9, 2011, Plaintiff was assigned to work in removing a swing set from the front of the Chamber of Commerce building in

Buena Vista, Colorado.  As he attempted to push a 200-pound boulder out of a hole, the boulder fell

back on him, and he felt a "pop" in his right hand and shooting pain up his arm into his shoulder.

He was on leave for two weeks, then on June 16, 2011, his medical restrictions were lifted.

Plaintiff contends that, as a result of being forced to work with his right hand, his hand has

not healed properly and he still feels pain.  He seeks $50,000.00 in "monetary" damages and

$50,000.00 in punitive damages from the Defendant.

## LEGAL STANDARDS

### I.  Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter

jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the

matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do

so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which

it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906,

909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined

from the allegations of fact in the complaint, without regard to mere conclusory allegations of

jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing

subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.

Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction

to hear his claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow

affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional

facts." *Stuart*, 271 F.3d at 1225 (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.

1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert

the motion into a Rule 56 motion."  *Id.*

## II.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to

dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis.

First, a court must identify "the allegations in the complaint that are not entitled to the assumption

of truth," that is, those allegations which are legal conclusions, bare assertions, or merely

conclusory. *Id.* at 678-80.  Second, the Court must consider the factual allegations "to determine

if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible

claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d

1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).

"The nature and specificity of the allegations required to state a plausible claim will vary based on

context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while

the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a

complaint, the elements of each alleged cause of action may help to determine whether the plaintiff

has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

The adequacy of pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citations omitted).   Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

## III.    Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*

Accordingly, the court must "not supply additional facts, nor ... construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

The Defendant argues first that he enjoys sovereign immunity from liability in this case for any claims raised against him in his official capacity. Second, Defendant contends he enjoys qualified immunity for Plaintiff's failure to state an Eighth Amendment claim. The Court will address each argument in turn.

## I.    Sovereign Immunity

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such

actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).  But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff alleges in his Amended Complaint that he seeks only monetary damages; there is no request for injunctive or declaratory relief.  (Docket #31 at 7.)  Therefore, the Court finds that Plaintiff's claim against Defendant does not fall under the *Young* exception to sovereign immunity under the Eleventh Amendment.  Accordingly, this Court has no jurisdiction to hear the Plaintiff's claim against Defendant in his official capacity, and the Court respectfully recommends that the District Court grant the Defendant's motion to dismiss such claim.

## II.     Qualified Immunity

Defendant also asserts he is entitled to qualified immunity on the claim against him in his individual capacity.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo*

8

*Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)).  Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation.  *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 129 S. Ct. at 816-22.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, the Court examines first whether Plaintiff has plausibly stated on the alleged facts that Defendant violated his constitutional right under the Eighth Amendment.  If the Court finds that a right was plausibly stated, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

A.    Eighth Amendment Violation

The Court begins with an analysis whether Plaintiff sufficiently alleges Defendant violated his right against cruel and unusual punishment provided by the Eighth Amendment.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).

A prisoner states a claim of cruel and unusual punishment under the Eighth Amendment for improper medical care by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle*, 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), overruled on other grounds by *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)(quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

10

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838).  This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).  "Deliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).  A plaintiff "must do more than establish that [the defendant] should have known of the risk of harm." *Id.*  He "[m]ust present evidence supporting an inference that [the defendant] actually knew about a substantial risk of serious harm to his safety." *Id.* "Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* at 1175-76 (internal quotations omitted).

Here, Plaintiff alleges he broke his hand, had the hand casted and re-casted, and received medical restrictions from "Dr. Fisher."  Accordingly, Plaintiff's injury constitutes a medical need as "one that has been diagnosed by a physician as mandating treatment." *Sealock*, 218 F.3d at 1209. Defendant concedes, for purposes of the present motion, that Plaintiff demonstrates this prong of the applicable test.  The Court agrees and finds that Plaintiff has properly alleged a sufficiently serious medical need to meet the objective component of his claim against Defendant.

11

With respect to the subjective component, Plaintiff must demonstrate that Defendant acted with deliberate indifference to his serious medical need. *See Farmer*, 511 U.S. at 834. A prison official may be held liable when he acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The official both must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837. The deliberate indifference standard "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care *or intentionally interfering with the treatment once prescribed.*" *Estelle*, 429 U.S. at 104-05 (emphasis added). This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *Id.* at 105. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. *Id.*

Here, Defendant contends that Plaintiff fails to "allege that Defendant was aware of any restrictions," and Plaintiff "does not allege that he handed them directly to Defendant." (Motion, docket #34 at 5.) Further, Defendant asserts "Plaintiff does not allege he was ordered to work *with his right hand* by Defendant in violation of his alleged restrictions, only that he was ordered to work generally." (*Id.* at 6 (emphasis in original)).

The Court disagrees. The allegations, taken as true, demonstrate that Defendant was aware the Plaintiff had broken his hand and received work restrictions from a doctor: "Sgt. Houle ignored written orders I handed him from a Dr. Fisher not to work with my right hand." (Docket #31 at 3.) According to the allegations, Plaintiff handed the written restrictions to Defendant on March 23,

2011, but could not begin work until he was cleared of a disciplinary write-up on April 1, 2011. (*Id.* at 4.) At that time, he was still under the work restrictions. (*Id.*) It is not clear from the allegations whether Plaintiff was in a cast or a splint at the time he handed Defendant the work restrictions on March 23, 2011 or when he started work on April 1, 2011, but "[w]ithin a couple of days, [Plaintiff] was re-casted due to work with right hand." (*Id.*) Plaintiff's cast was removed on April 13, 2011 and he was placed in a soft splint and continued work restrictions until May 18, 2011 when further x-rays would be taken. (*Id.*) However, before that date, Plaintiff suffered another injury to his right hand when he was allegedly forced to push a 200-pound boulder out of a hole, presumably using both hands. (*Id.* at 5.) Defendant, therefore, allegedly knew of Plaintiff's serious medical condition, and despite this knowledge, failed to ensure that he followed prescribed work restrictions. *See Estelle*, 429 U.S. at 104-05 (deliberate indifference standard "is manifested by ... prison guards in intentionally interfering with the treatment once prescribed."); *see also Martinez v. Garden*, 430 F.3d 1302, 1305 (10th Cir. 2005) (concluding that prison medical staff's knowledge of a plaintiff's serious medical condition, coupled with their failure to ensure plaintiff received medical treatment, could constitute deliberate indifference within the context of the Eighth Amendment).

Thus, the allegations demonstrate that Defendant disregarded a "substantial risk of serious harm" to Plaintiff by failing to followed prescribed work restrictions as instructed by a prison doctor. *See Farmer*, 511 U.S. at 847. Accordingly, the Court finds that Plaintiff has met the subjective component of his Eighth Amendment claim against Defendant.

B.     Violation Clearly Established

Further, the Court finds that Plaintiff's Eighth Amendment claim was clearly established at the time of the incident. If a plaintiff establishes a violation of a constitutional right he must then

demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in defendant's position would have known that his conduct violated that right. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006).

Here, the allegations are that the Defendant knew Plaintiff was recovering from a broken hand and knew that the doctor had ordered Plaintiff not to work using his right hand. It has been clearly established since 1976 that a prison official's failure to act in accordance with prescribed medical instructions can give rise to an Eighth Amendment claim. *See Estelle*, 429 U.S. at 104-05. Thus, the Court recommends that the District Court find Defendant is not entitled to qualified immunity from Plaintiff's Eighth Amendment claim regarding the Defendant's deliberate indifference to Plaintiff's prescribed medical treatment, and that the District Court deny Defendant's motion to dismiss Plaintiff's Eighth Amendment claim against Defendant in his individual capacity.

## **CONCLUSION**

Here, Defendant sufficiently demonstrates that he is entitled to sovereign immunity from suit in his official capacity; however, he fails to show that he is entitled to qualified immunity from liability with respect to the Plaintiff's Eighth Amendment claim against him in his individual capacity. Accordingly, the Court respectfully RECOMMENDS that the District Court **GRANT IN**

14

**PART AND DENY IN PART** the Defendant's Motion to Dismiss Plaintiff's Amended Complaint [filed June 29, 2012; docket #34], and dismiss Plaintiff's Eighth Amendment claim against Defendant in his official capacity.

Dated at Denver, Colorado, this 4th day of September, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge